UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SOUTHWESTERN BELL MOBILE SYSTEMS, LLC <br>     Plaintiff <br><br> v. <br><br> CHRISTOPHER P. KUHN, <br>     Defendant | **VERIFIED COUNTERCLAIM AND JURY DEMAND** |

### PARTIES

1. The Counterclaim Plaintiff Christopher P. Kuhn ("Landlord") is an individual who resides in Centerville, Massachusetts.

2. The Counterclaim Defendant Southwestern Bell Mobile Systems LLC is, on information and belief, a limited liability company which claims to have its principal place of business at 5565 Glenridge Connector, Atlanta, Georgia. The Counterclaim Defendant (hereinafter "Tenant") has alleged that it is the Tenant as the successor in interest to Southwestern Bell Mobile Systems, Inc. *See* Complaint at ¶ 5.

### FACTUAL BACKGROUND:

**A.  Description of the Lease**

3. Landlord owns certain real property located at Thomas B. Landers Road, West Falmouth, Massachusetts ("Real Property").

4. On or about March 8, 1996, Landlord and Tenant entered into a certain *Lease Agreement* ("Lease"). A copy of the Lease is attached hereto as Exhibit A.

5. The Lease was prepared and drafted by Tenant and, on information and belief, is a form of commercial lease utilized by Tenant in the ordinary course of its business.

6. The Lease provides that the Lease and performance thereunder shall be governed in accordance with the laws of the Commonwealth of Massachusetts.

7. Pursuant to the Lease, Landlord leased to Tenant the Real Property, subject to certain rights of way and other access. The initial term of the Lease was for ten (10) years subject to further extensions.

8. Pursuant to the Lease, at its own cost and expense, Tenant constructed a cellular telephone communications facility including, among other things, a transmission tower, antennas and related facilities (collectively, "Transmission Station") on the Real Property.

9. Pursuant to the Lease, Tenant was required to make monthly payments of $1,400.00 to the Landlord on or before the first day of the month. Tenant was also responsible for the payment of all real estate taxes and personal property taxes relating to the Real Property.

10. Pursuant to the Lease, Tenant was authorized to lease space ("Sublease") on the Transmission Station to third parties. Pursuant to the Lease, during the first five (5) years of the Lease, Landlord was entitled to five percent (5.0%) of the income received by Tenant from any Sublease. During the final five (5) years of the Lease, Landlord was entitled to fifty percent (50.0%) of the income received by Tenant from any Sublease ("Sublease Payments").

**B.   Tenant's Default for Non-Payment in Accordance with the Lease**

11. On and after April 1, 2004, Tenant failed to make required monthly payments pursuant to the Lease including Landlord's share of payments from any Subleases.

12. On May 19, 2004, pursuant to the Lease, Landlord provided written notification ("Default Notice") to Tenant, by first class mail and certified mail, of its failure to make payments required under the Lease for the months of April and May 2004 along with the required opportunity

to cure. A copy of the Default Notice is attached as Exhibit B and B-1 along with the signed certified mail cards.

13. On June 23, 2004, Tenant having failed to respond to the Default Notice or cure its defaults under the Lease, Landlord provided written notification ("Termination Notice") to Tenant, by first class mail and certified mail, of the termination of the Lease. A copy of the Termination Notice is attached as Exhibit C and C-1 along with the signed certified mail cards.

14. Pursuant to the Termination Notice and in accordance with the terms of the Lease, Landlord requested that Tenant surrender possession of the Real Property.

15. Pursuant to the Termination Notice and in accordance with the terms of the Lease, Landlord requested that Tenant deliver to the Landlord title to the Transmission Station.

16. On or after July 2, 2004, Tenant sent a letter, dated July 1, 2004, to Landlord attempting to "cure" the default under the Lease. In this letter, Tenant asserted that "checks have been returned due an incorrect address." A copy of this letter is attached as Exhibit D

17. Notwithstanding the Tenant's assertion in its letter dated July 1, 2004, the Landlord's post office box address had not changed in over one (1) year. Further, Tenant had delivered prior payments required under the Lease to Landlord at its effective address.

18. Landlord, and Tenant, had not used the incorrect address for over one year. Submission by the Tenant to an address that it knows or has reason to know is not in effect does not constitute timely payment in compliance with its payment obligations, prevented the Landlord from obtaining the fruits of its contract, and is, in fact, a material breach of the Lease.

## COUNT 1
### BREACH OF CONTRACT

19. Landlord repeats all of the allegations set forth in paragraphs 1 – 18 as if they had been set forth in full.

20. The facts, acts, practices and omissions set forth in paragraph 18 above constitute material breaches of the Lease by the Tenant.

21. Tenant's breaches of the Lease have damaged Landlord in an amount in excess of $20,000.00 to date.

## COUNT II
### DECLARATORY JUDGMENT – TERMINATION OF LEASE

22. Landlord repeats all of the allegations set forth in paragraphs 1 – 21 as if they had been set forth in full.

23. The facts, acts, practices and omissions set forth herein establish that actual and justiciable controversies exist between Landlord, on the one hand, and Tenant, on the other, as to whether: (i) in light of Tenant's material breaches of the Lease, Landlord properly terminated the Lease; (ii) Tenant is required to vacate the Real Property and (iii) Tenant is required to deliver title to the Transmission Station to the Landlord. These matters are all appropriate for judicial determination and for declaratory relief under 28 U.S.C. §§ 2201-2202.

## COUNT III
### DEMAND FOR AN ACCOUNTING

24. Landlord repeats all of the allegations set forth in paragraphs 1 – 23 as if they had been set forth in full.

25. At no point prior to the termination of the Lease has Tenant provided Landlord full and complete accounting with respect to the Subleases and Sublease Payments.

26. Landlord demands that Tenant provide a full and complete accounting with respect to any and all Subleases including, but not limited to, the terms and conditions of such Subleases and Sublease Payments received therein from the date of the Lease to the delivery of possession of the Real Property to the Landlord.

-5-

## COUNT IV

### BREACH OF CONTRACT

27. Landlord repeats all of the allegations set forth in paragraphs 1-26 as if they had been set forth in full.

28. To the extent that the accounting demanded in Count III reflects that the Tenant has failed to pay Landlord the amounts due as Sublease Payments then Tenant has breached such obligations whereby Landlord has sustained damages.

WHEREFORE, Landlord respectfully requests that this Court:

1. Enter judgment on Landlord's behalf and against Tenant on Count I and Count IV for all sums due and owing, including interests, costs and attorney's fees;

2. Enter judgment on Landlord's behalf and against Tenant on Count II declaring that: (i) in light of Tenant's material breaches of the Lease, Landlord properly terminated the Lease; (ii) Tenant is required to vacate the Real Property and (iii) Tenant is required to deliver title to the Transmission Station to the Landlord.

3. Enter judgment on Landlord's behalf and against Tenant on Count III and enter an Order requiring that Tenant provide an accounting to Landlord of Sublease Payments.

4. Enter such other and further Orders as are just and appropriate.

**A TRIAL BY JURY IS DEMANDED UPON ALL ISSUES TO WHICH THE PLAINTIFF IS ENTITLED THEREO.**

                                Respectfully submitted
                                CHRISTOPHER P. KUHN,
                                By his attorneys,

Dated: August    , 2004

                                Gerald S. Garnick BBO# 185920
                                Alex M. Rodolakis BBO# 567781
                                GARNICK & SCUDDER, P.C.
                                32 Main Street
                                Hyannis, MA 02601
                                (508) 771-2320

### VERIFICATION OF COUNTERCLAIM

    I, Christopher P. Kuhn, the within-named Landlord in the above-captioned matter, hereby state that I have read the foregoing Verified Counterclaim. I hereby verify that, to the best of my knowledge, all of the facts contained therein are true and accurate and to those facts, which I allege on information and belief, I believe them to be true and accurate.

Dated: August 13, 2004

                                                  Christopher P. Kuhn.

### COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE, SS.                                          August 13, 2004

    Then personally appeared the above-named Christopher P. Kuhn proved to me through satisfactory evidence of identification, which was a Commonwealth of Massachusetts Driver's License to be the person whose name is signed above and acknowledged to me that he signed the foregoing instrument voluntarily for its stated purpose, before me,

My Commission Expires: 10/31/08

CERTIFICATE OF SERVICE: I, Gerald S. Garnick, hereby certify that I have served a true copy of the foregoing documents on all parties/counsel of record by forwarding the documents, first class mail postage prepaid, on 8/17/04 .

                                                  Gerald S. Garnick, BBO# 185920