UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SOUTHWESTERN BELL MOBILE SYSTEMS LLC<br><br>Plaintiff, Defendant in Counterclaim<br><br>v.<br><br>CHRISTOPHER P. KUHN,<br><br>Defendant, Plaintiff in Counterclaim | Civil Action No.: 04CV11584 PBS |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS COUNT III (DEMAND FOR AN ACCOUNTING) AND COUNT IV (BREACH OF CONTRACT) OF DEFENDANT'S COUNTERCLAIM

### Introduction and Background[1]

This dispute arises out of a lease agreement (the "Lease") between Christopher P. Kuhn ("Kuhn") as landlord and Southwestern Bell Mobile Systems LLC ("SBMS")[2], as tenant. Pursuant to the provisions of the Lease, which has options to renew running through 2016, SBMS constructed a cellular tower upon the leased property and outfitted the tower with equipment sufficient to create a fully functioning cellular site. See Verified Counterclaim and Jury Demand (hereinafter "Counterclaim"), Exhibit A. The parties agreed that, upon "termination" of the Lease, the cellular tower would become "the property of [Kuhn]." See id.

---

[1] SBMS is aware of (and takes seriously) its obligation to limit the facts that it relies upon in its Motion to Dismiss to the pleadings and documents referenced therein. The facts relied upon in moving to dismiss Counts III and IV of Kuhn's counterclaim are drawn only from the counterclaim and the Lease attached thereto. See Counterclaim and its Exhibit A. Nevertheless, SBMS believes that it is necessary for the court to understand the full dispute between the parties in order for it to make an informed ruling on this limited motion to dismiss. Accordingly, SBMS includes these background facts for the Court's convenience.

[2] SBMS is an indirect wholly owned subsidiary of Cingular Wireless LLC, which operates Commercial Mobile Radio Service (as that term is defined by the Federal Communications Commission) across the United States. The assets of SBMS, and, more specifically, the assets at issue in the present dispute, make up a vital portion of that network and are critical to the provision of cellular service in Cape Cod Massachusetts.

Kuhn claims that he received three late rent checks beginning in April 2004, and, that, accordingly, he should be entitled to take possession of the cellular tower immediately. See Counterclaim, paras. 11-15. The cellular tower and equipment at issue are critical to SBMS' ability to continue to provide Commercial Mobile Radio Service to the public, and to continue to operate the federally mandated "E-911" public safety system. Thus, following Kuhn's claims that he was entitled to take possession of the cellular tower and equipment, SBMS instituted this action in July 2004 seeking a declaratory judgment setting forth the parties' rights and obligations under the Lease.

SBMS rejects Kuhn's argument that he is entitled to take possession of the cellular tower on both factual and legal grounds. The Lease addresses situations where SBMS "fails to make a payment." See Counterclaim, Exhibit A. Respectfully, SBMS has never failed to do so. See Counterclaim, para. 17. Payments were timely sent out of its centralized vendor payment system in El Paso, Texas addressed to Kuhn. See id. A computer error resulting from the installation of new vendor software caused these checks to be sent to a post office box previously (but apparently no longer) utilized by Kuhn and were returned by the United States Postal Service. See Counterclaim, Exhibit D. The checks were then re-sent by SBMS to Kuhn at his newer post office box. See id. Thus, it cannot be said that SBMS "failed to make a payment" since the proper funds were disbursed by SBMS at the proper times. See id.

Even if SBMS can be said to have missed a payment, however, such circumstances do not create a contractual right for Kuhn to take possession of the cellular tower. See Counterclaim, Exhibit A. Specifically, upon "non-payment" of rent, the Lease gives Kuhn the right to "maintain an action." See id. Conversely, the Lease only allows Kuhn the option of taking possession of the cellular tower upon "termination" of the Lease. See id. Unlike many

lease agreements, Kuhn does not have a right to declare a termination upon default and accelerate the rental payments. See id. Rather, his sole remedy for non-payment (if in fact there was a non-payment, which SBMS rejects) is to bring suit for the rental payments (an action which is moot since SBMS re-sent the payments to the appropriate address after discovering the error). See id. Reading these lease provisions together, and taking note of the disparate language used by the parties, namely "termination" and "maintain suit," it is clear that the intention of the parties was to give Kuhn the option of taking possession of the cellular tower only at the very end of the leasehold (a reading which also happens to make economic sense). See id.

Even if the failure to make rental payments could be said to cause a "termination," it is black letter Massachusetts law that any breach sufficient to declare the termination of an agreement must be "material." See Boston Hous. Auth. v. Hemingway, 363 Mass. 184, 200 (1973); Barry v. Frankini, 287 Mass. 196, 199-200 (1934). SBMS, respectfully, submits that three payments improperly directed (due to a software error) to a prior post office box utilized by Kuhn cannot be said to be "material" so as to allow Kuhn to declare the Lease "terminated" and take possession of a an extremely valuable asset. See Counterclaim, para. 16.

SBMS respectfully suggests that the present dispute is nothing more than an attempt by Kuhn to take advantage of a minor software glitch in order to either seize an asset he would not otherwise be entitled to until 2016, or, conversely, exercise leverage in order to renegotiate the Lease. Regardless of Kuhn's intent, however, this dispute revolves clearly around the rights and obligations of the parties under the Lease as they relate to the three payments sent by SBMS to Kuhn's earlier post office box. These issues will properly be decided either upon summary judgment or at trial.

The present motion seeks to dismiss two counterclaims brought by Kuhn that have nothing to do with this central dispute between the parties. Specifically, Kuhn, in Count III, has alleged that he is entitled to a "full and complete" accounting of certain sub-lease payments due to him by SBMS.[3] See Counterclaim, paras. 24-26. He then asserts a breach of contract claim, in Count IV, in the prospective event that such an accounting shows that he did not receive all of the funds rightfully owed to him. See Counterclaim, paras. 27-28.

Kuhn's counterclaim was the first time SBMS has ever heard that Kuhn disputes the amounts of the sub-lease payments that have been made to him (Kuhn never gave certified notice under the Lease of any such claim, as was required). In fact, a careful reading of Counts III and IV of the counterclaim illustrates that Kuhn is not even making such an argument. See Counterclaim, paras. 24-28. Rather, Kuhn seems to allege that he is entitled to some type of accounting without any allegation of wrongdoing on SBMS' part. See id. These claims are not actionable under either the Lease or Massachusetts common law, and, accordingly, Kuhn has failed to state claims upon which relief can be granted. See Counterclaim, Exhibit A.

As a practical matter, dismissal of these claims is necessary and desirable because SBMS cannot meet its initial disclosure or discovery obligations in the face of claims not properly plead, not rooted in law and prospective in nature.

## Argument

### I. Kuhn Has No Contractual Right To An Accounting.

There is no contractual provision that applies to Kuhn's claim that he is entitled to an accounting, and Kuhn does not allege so in his counterclaim. Count III demands a "full and

---

[3] The Lease authorizes SBMS to lease space ("Sublease") on the cellular tower to third party cellular carriers. During the first five (5) years of the Lease, Kuhn was entitled to five percent (5 %) of any income received by
*(Footnote continued on next page)*

complete accounting with respect to any and all Subleases ...." Kuhn's allegation assumes, without stating so, that he is entitled to such an accounting. A careful reading of the Lease, however, clearly shows that Kuhn has no contractual right to an accounting, and that the parties never agreed to one.

Accordingly, this Court should dismiss Count III and Count IV of the counterclaim as they fail to state claims upon which relief can be granted.

## II. There Is No Common Law Right To An Accounting.

Kuhn has not invoked (nor can he invoke) any existing and/or controlling authority under Massachusetts common law that would entitled him to an accounting.[4] Counsel for SBMS have conducted a diligent search and have been unable to uncover any Massachusetts case law or a statute that may provide a basis for an accounting under these circumstances.

In 2002, the First Circuit—applying Massachusetts law—struggled with a claimant's demand for an "accounting." The First Circuit could not even discern whether, under Massachusetts law, an accounting should be "regarded as a cause of action [] or merely [] a remedy for some other claim such as a breach of contract, unjust enrichment, or the like." Cambridge Literary Props., Ltd. V. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg., 295 F.3d 59, 64 (1st Cir. 2002). To the extent that there is any common law claim for an "accounting," the Cambridge Literary Court suggested that, whatever the label, a claimant must show that: (i) he has a right to make a demand based on the law; (ii) that profits have been improperly derived; and (iii) that his share was wrongfully withheld by the defendant in question. See id. Kuhn has

---

*(Footnote continued from previous page)*
SBMS from any Sublease. During the final five (5) years of the Lease, Kuhn would be entitled to fifty percent (50 %) of any Sublease income received by SBMS during that time. See Counterclaim, Exhibit A.

[4] The Lease calls for the application of Massachusetts substantive law. See Counterclaim, Exhibit A.

not plead any of these elements (nor can he), and, thus, he cannot state a claim or remedy for an accounting. See id.

Furthermore, Kuhn has not alleged (nor can he) that he has in any way sustained damages in this regard. In fact, Count IV alleges that "[t]o the extent the accounting demanded on Count III reflects that [SBMS] has failed to pay [Kuhn] the amounts due as Sublease Payments then [SBMS] has breached such obligations whereby [Kuhn] has sustained damages." This allegation makes clear that Kuhn has not (and cannot) currently state a claim for damages; rather, he is seeking this court's permission to search for such a claim. In this respect, devoid of a contractual right, Kuhn demands an accounting to (hopefully) buttress his prospective claim (to wit: a possible breach of contract concerning sublease rental payments). In the absence of an applicable contractual provision and any allegation of impropriety on the part of SBMS in its administration and/or payment of sums due under the Sublease rentals, Kuhn has not sufficiently plead a cause of action upon which this Court should grant the type of relief he claims. See Cambridge Literary Props., 295 F.3d at 64.

Kuhn should not be allowed to use this Court to search prospectively for claims that he cannot (and has not) plead, and which do not exist.

## Conclusion

Based on the foregoing, this Court should dismiss Defendant's Counterclaim Counts III (Demand for an Accounting) and IV (Breach of Contract) under Fed.R.Civ.P. 12(b)(6).

Respectfully submitted,

Southwestern Bell Mobile Systems LLC

By its attorneys,

Jonathan Sablone, BBO #632998
Juán A. Concepción, BBO #658908
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110-2131
(617) 345-1000

Dated: September 13, 2004

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document has been furnished to Gerald S. Garnick, Esq., Garnick & Scudder, P.C., 32 Main Street, Hyannis, MA 02601, via first class mail on September 13, 2004.

Jonathan Sablone

BOS1416036.1