# LEASE AGREEMENT

This Agreement, made this 8th day of March, 1996, between Christopher P. Kuhn, of 239 Prince Avenue, Marstons Mills, MA 02648 (hereinafter referred to as LESSOR), and Southwestern Bell Mobile Systems Inc., d/b/a CellularOne, a Delaware and Virginia Corporation, whose address is 100 Lowder Brook Drive, Westwood, MA 02090 (hereinafter referred to as LESSEE).

1. The LESSOR hereby leases to LESSEE that certain parcel of real property containing approximately 3,600 square feet, situated on Thomas B. Landers Road, West Falmouth, Barnstable County, Commonwealth of Massachusetts, being a 60' X 60' parcel together with all connecting rights-of-way thereto for utilities and unrestricted pedestrian and vehicular ingress and egress (all of which are hereinafter called the Premises), and shown on Exhibit "A" attached hereto and made a part hereof. Said Premises are located on real property owned by the LESSOR more particularly shown on the 1995 Town of Falmouth Assessors' Map # 15, Section # 3, Parcel # 9A, and containing 1.32 acres more or less. Lessor shall grant all easements as may be required by electric and telephone companies for the purpose of servicing LESSEE'S equipment on the Premises. During the construction of LESSEE'S facility hereunder, LESSOR hereby grants to LESSEE, the right to use additional land contiguous to the Premises for construction purposes. LESSOR hereby grants to LESSEE, the option and right to survey the Premises at LESSEE'S expense, and said survey will then become Exhibit "B" and be attached hereto and made a part hereof. Exhibit "B" will control in the event of discrepancies between Exhibits "A" & "B".



1

2. This Lease Agreement shall be for an initial term of Ten (10) years, beginning on the first day of the month following the date this Lease Agreement is executed by LESSEE (the effective date) at an annual rental of Sixteen Thousand Eight Hundred ($16,800.00) Dollars to be paid in equal monthly installments of One Thousand Four Hundred ($1,400.00) Dollars on the first day of the month, in advance, to LESSOR or to such other person, firm or place as LESSOR may from time to time designate in writing at least thirty days in advance of any rental payment date. While LESSEE intends to make each payment due hereunder on or before its due date, in the event LESSEE fails to make a payment within fifteen (15) days after its due date, LESSOR will give LESSEE written notice of such nonpayment and LESSEE will immediately make such payment. No action may be maintained by LESSOR against LESSEE for such nonpayment unless LESSEE has failed to make payment within fifteen (15) days after receipt of such written notice of non-payment from LESSOR.

3. a. At the end of the initial ten (10) year term, this lease agreement will be automatically extended for an additional five (5) year period, unless the LESSEE notifies the LESSOR in writing of it's intention to cancel. Notice of cancellation must be sent twelve (12) months prior to the end of the initial ten (10) year term and shall be deemed validly given if sent by certified mail, return receipt requested, to the LESSOR at the address listed in paragraph #21 herein (or any other address that the LESSOR may have designated to the LESSEE by like notice).    b. At the end of the first five (5) year period, this lease agreement will be automatically extended for a second and final five (5) year period, unless the LESSEE notifies the LESSOR in writing of it's intention to cancel. Notice of cancellation must be

2

sent twelve (12) months prior to the end of the first five (5) year period and shall be deemed validly given if sent by certified mail, return receipt requested, to the LESSOR at the address listed in paragraph #21 herein (or any other address that the LESSOR may have designated to the LESSEE by like notice). There are to be no further extensions. In the event LESSEE decides at any time to cancel this Lease Agreement, LESSEE agrees to notify the mortgagee who's mortgage is secured by the Property of said cancellation. Notice of cancellation must be sent twelve (12) months prior to the end of the then current Lease period and shall be deemed validly given if sent by certified mail, return receipt requested.

4. The annual rental will be increased by four percent (4%) of the prior year's lease payment amount. Said increase to take place on the annual anniversary of the Lease Agreement and shall apply to each year of each five (5) year extension and all sublease agreements.

5. With LESSOR'S prior approval LESSEE shall be allowed to lease space on the tower to other wireless companies for periods of time not to exceed the length of this Lease, said approval shall not be unreasonably withheld or delayed. For the first five (5) years of this lease the rental income received by LESSEE from any such leases will be distributed in equal monthly installments as follows: To the LESSEE named herein ninety-five (95%) percent and to the LESSOR named herein five (5%) percent. Any additional rental income received by the LESSEE after the first five (5) years shall be divided equally between the LESSEE (50%) named herein and the LESSOR (50%) named herein. LESSEE agrees to actively seek additional wireless companies to lease said space. All said leases shall be subject to a four (4%) percent annual rental increase.

3

6. The Premises shall be used for the primary purpose of constructing, maintaining and operating a cellular telephone communications facility consisting of one, one hundred ninety (190') foot tall tower structure, antennas and antenna arrays, an equipment building and all necessary appurtenances, radio/electronic/electrical equipment, connecting cables, coax, wires and associated appurtenances. A security fence, eight (8') feet in height consisting of chain link construction or similar but comparable construction will be placed around the perimeter of the Premises, not including the connecting rights-of-way. LESSEE agrees to have the said tower designed and constructed to be able to accommodate a total of three (3) wireless companies, including LESSEE. For the purpose of calculating the loading capacity of the tower and its foundation, the equipment of each company is presumed to be similar in size and quantity as that of the maximum amount of equipment to be used by the LESSEE. Upon completion of the said construction the LESSEE shall provide the LESSOR with a complete set of all plans and permits for said tower. All in accordance with the Site Plan dated October 1st, 1995, which is on file with the Town of Falmouth Zoning Board of Appeals and in conformance with Appeal No. 131-95. All improvements made by LESSEE on the Premises shall be at LESSEE'S expense and LESSEE will maintain the Premises in a reasonable condition.

7. LESSEE shall install or have installed, communications equipment of the type and frequency which will not cause measurable interference, as defined by the F.C.C., to the currently licensed and operating communications equipment of LESSOR, or other lessees on LESSOR'S property. In the event LESSEE'S equipment causes such interference, LESSEE will take all reasonable steps necessary to correct and eliminate the interference. LESSOR

agrees not to permit the subsequent installation of communications equipment on its property, or the Premises which would cause measurable interference as defined by the F.C.C., to LESSEE'S operations hereunder. Should LESSOR breach any term or condition of this paragraph, LESSEE may immediately terminate this Agreement and LESSOR shall be responsible to LESSEE as provided herein.

8. LESSEE shall have a separate power meter installed for its electric service and LESSEE shall pay all costs related to said electric service.

9. It is understood and agreed that LESSEE'S ability to use the Premises is contingent upon its obtaining either before or after the effective date of this Agreement all of the certificates, permits and other approvals required by any federal, state and local authorities. LESSOR shall cooperate with LESSEE in its effort to obtain such approvals. In the event that any of such applications should be rejected, or any certificate, permit, license or approval issued to LESSEE is canceled, expires, lapses or is otherwise withdrawn or terminated by government authority so that LESSEE in its sole discretion determines that it will be unable to use the Premises for its intended purposes, LESSEE shall have the right to terminate this Agreement by written notice. Notice of LESSEE'S exercise of its right to terminate shall be given to LESSOR by certified mail, return receipt requested, and shall be effective thirty (30) days thereafter. All rentals prepaid to said termination, shall be kept by LESSOR and this Agreement shall become null and void and the parties shall have no further obligations, including the payment of money, to each other.

10. LESSEE shall indemnify and hold LESSOR harmless against any claim of liability or loss for personal injury or property damage resulting from or arising out of the use and occupancy and operations of the Premises by LESSEE, its servants or agents, excepting, however, such claims or damages as may be due to or caused by the acts of LESSOR, or its servants or agents. In the event of LESSOR'S negligence or willful misconduct, LESSOR shall indemnify LESSEE.

11. LESSEE shall, at LESSEE'S expense, obtain and keep in force during the term of this Agreement a policy of comprehensive public liability and property damage insurance insuring LESSEE and LESSOR as an additional named insured against any claim of liability arising out of LESSEE'S use or occupancy of the Premises. Such insurance shall further provide coverage in terms of occurrence and aggregate in the amount of $1,000,000. combined single limit. Upon request, LESSEE shall provide LESSOR with a certificate of insurance evidencing the above coverage.

12. LESSEE shall pay as additional rent, all real estate taxes, and/or personal property taxes, levied against the Premises, which taxes are directly attributable to the improvements constructed thereon by LESSEE. LESSEE reserves the right to seek abatements or challenge assessments of any real estate or personal property taxes for which LESSEE is responsible.

13. Upon the termination of this Agreement and at the sole option of the LESSOR, the equipment building, tower, tower foundation, generator, security fence and power meter

shall become the property of the LESSOR. Also upon termination of this Agreement, LESSEE shall within ninety (90) days and at its option, remove all of its personal property and fixtures, and restore the Premises to its original condition, reasonable wear and tear, and damage to trees and shrubbery excepted. In the event such property is not removed, on or before that deadline it shall become the property of LESSOR. If such time for removal causes LESSEE to remain on the Premises after termination of this Agreement, LESSEE shall pay rent at the then existing monthly rate, for such portion of said 90 day period.

14. Should LESSOR, at any time during any term of this Agreement, sell all or any part of the Premises to a purchaser other than LESSEE, such sale shall be under and subject to this Agreement and LESSEE'S rights hereunder.

15. LESSOR covenants that LESSEE, on paying the rent and performing the covenants herein, shall peaceably and quietly have, hold and enjoy the Premises.

16. LESSOR covenants that LESSOR is seized of good and sufficient title and interest to the Premises and has full authority to enter into and execute this Agreement. LESSOR further covenants that there are no liens, judgments or impediments of title on the Premises other than those of record.

17. In the event LESSEE fails to comply with any of the provisions of this Agreement or to perform any of its obligations hereunder, other than the payment of rent which is subject to Paragraph 2 above, LESSOR shall give LESSEE written notice of such breach and LESSEE

shall have thirty (30) days after receipt of such written notice of breach from LESSOR to cure any default other than nonpayment. No action may be maintained by LESSOR against LESSEE for such breach unless LESSEE has failed to cure same within the applicable notice of default period hereunder. In the event that it requires more than thirty (30) days for LESSEE to cure any default other than non-payment of rent, LESSEE shall not be deemed in default if LESSEE commences the cure within the notice period and prosecutes the same diligently to completion.

18. This Agreement contains all the agreements, promises and understandings between LESSOR and LESSEE and no oral agreements, promises or understandings shall be binding upon either LESSOR or LESSEE in any dispute, controversy or proceeding at law, and any addition, variation or modification to this Agreement shall be void and ineffective unless made in writing and signed by the parties hereto.

19. This Agreement and the performance thereof, shall be governed, interpreted, construed and regulated by the laws of the Commonwealth of Massachusetts.

20. This Agreement may be assigned or transferred at any time to LESSEE'S affiliates, successors or subsidiaries without the written consent of LESSOR. Any other assignment by LESSEE shall require the written consent of LESSOR, such consent not to be unreasonably withheld or delayed.

21. All notices hereunder must be in writing and shall be deemed validly given if sent by certified mail, return receipt requested, addressed as follows (or any other address that the party to be notified may have designated to the sender by like notice) and shall be deemed received as of the earlier date five days after the date of the postmark or actual receipt thereof:

LESSOR:    Christopher P. Kuhn
           239 Prince Avenue
           Marstons Mills, MA  02648

LESSEE:    Southwestern Bell Mobile Systems, Inc.
           d/b/a CellularOne
           100 Lowder Brook Drive
           Westwood, MA 02090
           ATTN: Vice President, Network Operations

22. LESSOR agrees to execute a Notice of Lease to be prepared by LESSEE, which Notice may be recorded by LESSEE at its expense.

23. At LESSOR'S option, this Agreement shall be subordinate to any mortgage by LESSOR which from time to time may encumber all or part of the Premises or connecting easements and rights-of-way; provided, however, every such mortgage shall recognize the validity of this Agreement in the event of a foreclosure of LESSOR'S interest and also LESSEE'S right to remain in occupancy of and have access to the Premises. LESSEE shall execute whatever instruments may reasonably be required to evidence this subordination clause. In the event the Premises is encumbered by a mortgage, LESSOR immediately after this agreement is

9

executed, will obtain and furnish to LESSEE, a non-disturbance instrument for each such mortgage in recordable form.

24. This Agreement shall extend to and bind the heirs, personal representatives, successors and assigns of the parties hereto.

In witness whereof, the parties hereto have set their hands and affixed their respected seals the day and year first above written.

LESSOR:   Christopher P. Kuhn

WITNESS:

_____   BY: _____
                                Christopher P. Kuhn

LESSEE:   Southwestern Bell Mobile Systems, Inc.
          d/b/a CellularOne

WITNESS:

_____   BY: _____
                                Paul J. Saur
                                Vice President, Network Operations

10

# CORPORATE ACKNOWLEDGMENT

The Commonwealth of Massachusetts

Norfolk    ss.                                                                 March 15, 1996

Then personally appeared the above named PAUL J. SAUR to me known, who, being by me duly sworn, did say that he is Vice President of Network Operations of Southwestern Bell Mobile Systems d/b/a CellularOne, a corporation and that he has authority to sign the foregoing instrument by authority of its board of directors and said PAUL J. SAUR acknowledged said instrument to be the free act and deed of said corporation.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal at my office in said county and state on the day and year last above written.

_____
Notary Public
My commission expires: 5/13/99

## INDIVIDUAL ACKNOWLEDGMENT

The Commonwealth of Massachusetts

Barnstable   ss: March 8th, 1996

Then personally appeared the above named CHRISTOPHER P. KUHN to me known to be the same person described in, and who executed the foregoing instrument, and acknowledge that he executed the same as his free and voluntary act and deed before me.

IN TESTIMONY WHEREOF, I have hereunder set my hand and affixed my seal in said county and state on the day and year last above written.

*[signature]*

Notary Public
My Commission expires:

MY COMMISSION EXPIRES NOV. 23, 1997

## NOTICE OF LEASE

LESSOR:  Christopher P. Kuhn
 239 Prince Avenue
 Marstons Mills, MA 02648

LESSEE:  Southwestern Bell Mobile Systems, Inc.
 d/b/a CellularOne
 100 Lowder Brook Drive
 Westwood, MA 02090

Date of Execution: March 8th, 1996

Commencement Date: April 1st, 1996

Description of Premises Leased: See Exhibit "A" attached hereto and made part hereof.

Term: Ten (10) years, with two (2) additional five (5) year renewal periods.

Signed, Sealed and Delivered this 8th day of March, 1996.

LESSOR:  Christopher P. Kuhn

 By: _____
  Christopher P. Kuhn

LESSEE:  Southwestern Bell Mobile Systems, Inc.
 d/b/a CellularOne

 By: _____
  Paul J. Saur
  Vice President, Network Operations

13

EXHIBIT "A"

B. LANDERS

L=629.52'

PARCEL NO. 9A
57,578 S.F.

THOMAS

S 77° 51' 01" E

CESSPOOL

HOME

PROPOSED CHAIN-LINK FENCE

PROPOSED ACCESSORY BUILDINGS

EXISTING PAVEMENT

PROPOSED UTILITY POLE

GRAVEL PARKING SURFACE

PROPOSED CHAIN-LINK FENCE

EXISTING UTILITY POLE

EDGE OF PROPOSED DRIVEWAY

PROPOSED ACCESSORY BUILDINGS

28'
28'
26'
28'
28'

12'
12'
12'
12'
12'
25'